**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**

Kristyn Graham

v.                                        Civil No. 07-cv-295-PB

Warden, New Hampshire State
Prison for Women, et al.


**REPORT AND RECOMMENDATION**

Pro se plaintiff Kristyn Graham has filed a complaint and
amendment thereto, pursuant to 42 U.S.C. § 1983, alleging that
defendants have abridged her rights under the Fourth[1], Eighth[2]
and Fourteenth Amendments to the United States Constitution
(document nos. 1 and 5). Named as defendants are the following
employees of the New Hampshire State Prison for Women ("NHSP/W"):
Joanne Fortier, Acting Warden; Dan Belligeron, Head Nurse and
Supervisor, Medical Department; Jean Chapman, Nurse; Kathy
Fontaine, employee. Also filed is a motion for appointment of
counsel (document no. 6).

---

[1]Although Graham broadly refers to the First Amendment, she
has not adequately identified a First Amendment claim. I
therefore construe the complaint to allege violations only under
the Fourth, Eighth and Fourteenth Amendments.

[2]I construe the complaint to allege Eighth Amendment claims
made applicable to the state actors through the Fourteenth
Amendment. See DesRosiers v. Moran, 949 F.2d 15, 17 (1st Cir.
1991).

The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted.  See 28 U.S.C. § 1915A; U.S. District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).  For the reasons stated below, I find that Graham has alleged the following claims: (1) Eighth Amendment claims premised on the denial of adequate medical care against Belligeron, Fontaine and Chapman; and (2) an Eighth Amendment claim premised on inhumane conditions of confinement against Fortier.  I recommend dismissal of all remaining claims.  I further recommend that the motion for appointment of counsel be denied.

<u>Standard of Review</u>

Under this court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review.  LR 4.3(d)(2).  In conducting the preliminary review, the court construes pro se pleadings liberally, however inartfully pleaded.  See <u>Erickson v. Pardus</u>, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) and <u>Haines v. Kerner</u>, 404 U.S. 519, 520–21 (1972) to construe pro se

pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  <u>See</u> <u>Castro v. United States</u>, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and an unnecessary dismissals of claims); <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997). All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true. <u>See</u> <u>id.</u>  This review ensures that pro se pleadings are given fair and meaningful consideration.

BACKGROUND

Graham is currently incarcerated as a sentenced inmate at the NHSP/W.  She allegedly arrived at the NHSP/W in February 2006, was released on administrative home confinement in March 2007 and returned to the NHSP/W on May 31, 2007.  Graham allegedly suffers from various mental health conditions, including ADHD[3], bipolar disorder, personality disorder and anxiety, for which she has been prescribed medications.  In

---

[3]I construe ADHD to mean Attention Deficit Hyperactivity Disorder.

addition, she allegedly suffers from physical conditions, including bladder and urinary tract problems, blood in her urine, kidney crystals and/or kidney stones, an infected tooth and two large lumps on her lower back.

During her incarceration at the NHSP/W, Graham claims, defendants subjected her to various unconstitutional conditions of confinement, including denial of adequate medical care and medications, inadequate heating and ventilation, overcrowding, constant illumination and resulting sleep deprivation and unsanitary cell and/or tier conditions.  She further claims that defendants housed her with inmates suffering from communicable disease, such as chicken pox, and inmates with higher security classifications, thereby endangering her safety.  In addition, Graham claims that defendants subjected her to improper urine testing procedures, whereby she was strip searched and directly observed during the course of producing urine samples.  She brings this civil rights action, alleging that defendants' acts and omissions violate her constitutional rights under the Fourth, Eighth, and Fourteenth Amendments.

DISCUSSION

I. Section 1983 Claims

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law.  See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981); Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).  In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  The premise of Graham's Section 1983 claim is that defendants, acting under color of state law, violated her Fourth, Eighth and Fourteenth Amendment rights, as discussed more fully below.

A.   Denial of Adequate Medical Care

Graham alleges that Belligeron, Fontaine and Chapman violated her rights under the Eighth Amendment by withholding essential health care.  To state an Eighth Amendment claim premised on inadequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  See Estelle, 429 U.S. at

97; accord Feeney v. Correctional Med. Servs., Inc., 464 F.3d 158, 161 (1st Cir. 2006).  In order to be found deliberately indifferent, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. See also Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison personnel "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05.  "A 'serious medical need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  See Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 17-18 (1st Cir. 1995)(quoting Gaudreault v. Salem, 923 F.2d 203, 208 (1st Cir. 1990).

Here, the complaint alleges sufficient facts to state an Eighth Amendment claim for the denial of adequate medical care. First, Graham has described a serious medical need by alleging that she suffers from mental health conditions, including ADHD,

bipolar disorder, personality disorder and anxiety.  She allegedly has been prescribed medications for her mental health conditions.  In addition, she allegedly suffers from physical conditions, including an infected tooth, two lumps on her back, bladder and urinary tract problems, blood in her urine and kidney crystals and/or kidney stones.  Second, she has demonstrated deliberate indifference with respect to Belligeron, Fontaine and Chapman by alleging that once they were notified of her serious medical needs and/or prescription medications, they nevertheless failed to provide her with adequate medical care and medications and/or caused a delay in providing such care and medications.

1.  Denial of Mental Health Medications

Upon Graham's arrival at the NHSP/W in February 2006, defendants prescribed her mental health medications, with the exception of her ADHD medications.  While released on home confinement from March 2007 through May 31, 2007, Graham allegedly was denied those medications.  Because she signed an authorization for the release of her medical records, she expected to receive her prescribed medications.  At that time, Graham allegedly was undergoing a detoxification of "benzos" and/or "Klonipin" but was only prescribed Benadryl.  For a period

exceeding three months, Graham allegedly was denied mental health medications.  She further alleges that when she returned to the NHSP/W in May 2007, defendants continued to deny her mental health medications.  Graham filed an inmate request slip with Fontaine regarding the deprivations, however, Fontaine failed to remedy the problem and/or take sufficient corrective action. Instead of meeting with Graham, Fontaine referred her to Pam Flounsant, a mental health counselor.  Flounsant received a list of medications that Graham was taking and assured Graham that she would inform Fontaine of her needs.  Subsequently, Graham was only prescribed "Alexa," an anti-anxiety medication, for one week; she was denied all other medications.  To date, Graham allegedly has not been prescribed any mental health medications. If true, the above allegations may demonstrate that Fontaine's acts and omissions prevented Graham from receiving prompt and adequate mental health care and medications.  Accordingly, I find that she has stated an Eighth Amendment claim premised on the denial of adequate medical care against Fontaine.

       2.   Denial of Adequate Medical Care

While incarcerated at the NHSP/W, Graham allegedly suffered from continuous problems with her bladder and urinary tract.

Over the last two years, she has been "passing kidney crystals
and/or kidney stones" and has had blood in her urine.  Belligeron
allegedly failed to inform Graham that she was diagnosed with
kidney crystals/stones.  Graham discovered the diagnosis when her
medical records inadvertently were returned to her instead of to
the medical department.  According to Graham, she has "suffered
tremendously" with regard to her kidney and bladder problems.
The NHSP/W Medical Department allegedly has denied her any
medication for her symptoms and pain.  She further alleges that
she has waited weeks to be seen by medical personnel "while
having blood in her urine [and] bladder and kidney pain."
Belligeron explained to Graham that the NHSP/W has only one
medical provider to treat all of the inmates.  Although Graham
was eventually given medication for one week to treat her bladder
spasms, she contends that the medication was ineffective.  She
allegedly has been denied an appointment with a urologist.

 Graham further alleges that she went to sick call for an
infected tooth but was denied antibiotics and pain medication.
Subsequently, on September 21, 2007, she allegedly was treated at
Catholic Medical Center ("CMC") for the infected tooth.  CMC
allegedly considered her condition a dental emergency and placed

9

her on intravenous antibiotics.  Although CMC returned Graham to
the NHSP/W with a prescription for certain antibiotics and pain
medication, Chapman allegedly denied Graham the prescribed
medications.  Instead, Chapman provided Graham with Vicodin, a
drug that allegedly was ineffective and not prescribed.  While
the allegations are not entirely clear, Graham appears to further
allege that Belligeron subsequently denied her Vicodin for her
infected tooth.  Lastly, Graham broadly alleges that defendants
denied her an x-rays for two large lumps on her lower back and
denied her adequate treatment for a swollen eye.

     Construed liberally, the complaint alleges that Graham
informed Belligeron and Chapman of the above deprivations but
they failed to intervene and ensure that she was provided with
adequate medical care.  If true, the above allegations may
demonstrate that defendants' acts and omissions prevented Graham
from receiving prompt and adequate medical treatment for her
infected tooth and her urinary, bladder and kidney problems.
Accordingly, I find that she has stated an Eighth Amendment claim
premised on the denial of adequate medical care against
Belligeron and Chapman.

B.   <u>Inhumane Conditions of Confinement</u>

Construed liberally, the complaint alleges that Graham was subjected to inhumane conditions of confinement in violation of her Eighth Amendment[4] rights.  I liberally construe this claim to be brought against Fortier in her representative capacity as Acting Warden of the NHSP/W.

The Eighth Amendment imposes duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" <u>Farmer</u>, 511 U.S. at 832-34 (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992)). An Eighth Amendment claim challenging conditions of confinement contains both an objective and a subjective component.  <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  The objective component requires the inmate to demonstrate that she has been

---

[4]Graham alleges that she has been "deprived of the minimal civilized measure of life's necessities" in violation of her First, Eighth and Fourteenth Amendment rights.  Because she alleges inhumane conditions of confinement and fails to adequately identify any First or Fourteenth Amendment claim, I construe her claim to arise solely under the Eighth Amendment, as made applicable to the state actors through the Fourteenth Amendment.  <u>See</u> <u>DesRosiers</u>, 949 F.2d at 17; <u>Farmer</u>, 511 U.S. at 832-34.

subjected to specific deprivations that are so serious that they deny her "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  The subjective component requires the inmate to demonstrate that the prison officials acted with a "sufficiently culpable state of mind"; the state of mind is one of deliberate indifference to inmate health or safety.  See Farmer, 511 U.S. at 834.  That is, prison officials must have been subjectively aware of the conditions of confinement and disregarded the excessive risk that the conditions posed to Graham's health or safety.  See Farmer, 511 U.S. at 834.

"[C]onditions of confinement, 'alone or in combination,' may deprive prisoners of the minimal civilized measure of life's necessities."  Wilson, 501 U.S. at 304 (quoting Rhodes, 452 U.S. at 347).  See also Murray v. Edwards County Sheriff's Dept., No. 06-3376, 2007 WL 2827723, slip op. at *5 (10th Cir. 2007) (holding that "numerous inhumane conditions of confinement may be actionable if in combination they 'produce[ ] the deprivation of a single, identifiable human need.'")(quoting Mitchell v. Maynard, 80 F.3d 1433, 1442 (10th Cir. 1996)).  Thus, a constitutional violation may be found where "overcrowded

conditions are accompanied by other substandard factors, such as 'poor repair and functioning of basic physical [prison] facilities such as plumbing, ventilation and showers, . . . food, medical care, sanitation, control of vermin, lighting, heating, ventilation, noise level, bedding, furniture, education and rehabilitation programs, safety and security staffing." <u>Moore v. Cumberland County Board of Freeholders</u>, Civil Action 06-4516 (RMB), 2006 WL 3359625, slip op. at *3 (D.N.J. Nov. 16, 2006) (quoting <u>Tillery v. Owens</u>, 907 F.2d 418, 427 (3d Cir. 1990) (considering the totality of circumstances relevant to finding whether conditions of confinement fell below minimal standards of decency)).

Here, Graham alleges that during her incarceration at the NHSP/W, defendants subjected her to various unconstitutional conditions of confinement, including inadequate heating and ventilation and overcrowding. As a result of lighting turned on twenty-four hours a day and the constant illumination, Graham allegedly suffers from sleep deprivation. She further alleges that she is forced to live in a "tier/dayroom", that her "unit is unsanitary" and that she has no bathroom and is forced to use the bathroom of other inmates. In addition, she allegedly is housed

13

with inmates who suffer from communicable disease, such as chicken pox, and therefore she is at risk of acquiring disease. Specifically, Graham claims that she is next to an inmate who has chicken pox and that another inmate recently left the tier after contracting chicken pox.  She further alleges that she is housed with inmates of higher security classifications and, therefore, is at risk of harm.  Specifically, she claims that she is sleeping in the tier and/or dayroom of the "life sentencing tier."  Without identifying her particular security level, Graham claims that she is housed with "murderers whose doors do not lock at all and where scissors are loaned to them throughout the day."

A liberal reading of the complaint suggests that Fortier, in her capacity as Acting Warden, was or should have been aware of the alleged substandard conditions of confinement and disregarded the resulting risk posed to Graham's health or safety. Considering the totality of the conditions described by Graham, I conclude that her allegations, if true, may demonstrate that Fortier's acts and omissions subjected her to inhumane conditions of confinement.  Accordingly, for purposes of preliminary review, I find that Graham has stated an Eighth Amendment claim against Fortier.

C.   <u>Improper Urine Testing Procedures</u>

Graham alleges that defendants violated her Fourth and Eighth Amendment rights by subjecting her to strip searches and direct observation while she produced urine samples.  The urine testing procedures to which Graham was subjected allegedly violated her right to be free from cruel and unusual punishment under the Eighth Amendment and her right to privacy and her right to be free from unreasonable searches under the Fourth Amendment.

1.   Eighth Amendment Claims

"The Eighth Amendment prohibits punishments which involve the unnecessary and wanton infliction of pain, are grossly disproportionate to the severity of the crime for which an inmate was imprisoned, or are totally without penological justification."  <u>Meriwether v. Faulkner</u>, 821 F.2d 408, 415 (7th Cir. 1987) (citing <u>Rhodes</u>, 452 U.S. at 346).  As explained above, in evaluating Eighth Amendment claims, courts conduct both an objective and a subjective inquiry.  The objective prong asks whether the alleged deprivation or condition of confinement is "sufficiently serious" so that a prison official's act or omission results in the "denial of the minimal civilized measure of life's necessities."  <u>Farmer</u>, 511 U.S. at 834.  If the

conditions complained of meet this threshold, courts then must
determine the prison official's subjective state of mind; that
is, whether he knows that the inmate faces a substantial risk of
serious harm and disregards that risk by failing to take
reasonable measures to abate it.  Id. at 847.  In the context of
bodily searches performed on inmates, only those searches that
are "maliciously motivated, unrelated to institutional security,
and thus "totally without penological justification" are
considered unconstitutional.  Meriwether, 821 F.2d at 418
(quoting Rhodes 452 U.S. at 346).  In other words, the search
must amount to "calculated harassment unrelated to prison needs."
Hudson v. Palmer, 468 U.S. 517, 530 (1984).

Here, Graham identifies three occasions during which she
allegedly was subjected to strip searches and urine tests in
violation of her Eighth Amendment rights.  First, upon her
arrival at the NHSP/W in February 2006, she "was stripped down at
intake and was ordered to urinate in a plastic cup . . . while
completely nude" in front of Sargent Biladea.  Second, a few
months later, she was awakened, stripped down and forced to
submit to a drug test by Corporeal Delacy.  Third, on May 31,
2007, when Graham arrived at the NHSP/W from administrative home

16

confinement, she was stripped down at intake and, while completely nude, was forced to give a urine sample to Officer Fischer.  There is no indication that any of the aforementioned corrections officers were male.  Graham claims that she notified Warden Gerry, Warden Fortier and Lieutenant Casio of the alleged violations but they failed to remedy the problem or take any corrective action.

Graham does not challenge the NHSP/S's right to conduct strip searches and urine testing as a matter of institutional security.  In fact, she concedes that the testing was performed for purposes of detecting drug use by inmates.  Instead, she objects to the NHSP/W's practice of strip searching her prior to and during urine testing and requiring her to provide a urine sample while completely naked and while in the presence of a corrections officer.  Graham has not alleged that any prison official intended to deliberately harm her during the course of the strip searches and urine tests; nor has she alleged that any prison official intentionally caused her embarrassment or discomfort.  She has not alleged that the defendants acted out of any motivation other than legitimate penological interests.  Accordingly, I conclude that Graham has failed to state a

cognizable Eighth Amendment claim premised on the urine testing procedures and recommend dismissal of this claim in its entirety.

    2.    Fourth Amendment Claims

    Graham further alleges that the urine testing procedures, which included being subjected to strip searches and observation by corrections officers, violated her Fourth Amendment rights. The Fourth Amendment provides that individuals have the right to be free from the government's "unreasonable searches and seizures."  U.S. Const. amend. IV.   "The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their direction."  Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 613-14, 109 S. Ct. 1402, 1411 (1989) (citations omitted).  The Fourth Amendment protects expectations of privacy.  See Winston v. Lee, 470 U.S. 753, 758 (1985) (citations omitted).  "[B]ecause the testing of one's urine constitutes an intrusion on that expectation, the Fourth Amendment's requirement of a reasonable search applies." Williams v. Wall, No. 06-12S, 2006 WL 2854296, slip op. at 2 (D.R.I. Oct. 4, 2006 )(citing Skinner, 489 U.S. at 617)(holding that "it is clear that the collection and testing of urine

intrudes upon expectations of privacy that society has long recognized as reasonable and that such intrusions are deemed searches under the Fourth Amendment).

In determining whether a search of a prisoner is reasonable, a court must balance "the significant and legitimate security interests of the institution against the privacy interests of the inmates," Bell v. Wolfish, 441 U.S. 520, 560 (1979), and accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 547. See also Thompson v. Souza, 111 F.3d 694 (9th Cir. 1997) (applying reasonableness test to strip search and urinalysis). Where, as here, an individual is incarcerated at the time the urine testing is performed, her privacy interest is diminished. See Hudson, 468 U.S. at 525-26. It is well-settled that the unauthorized use of narcotics in a prison by inmates poses a serious threat to prison officials' ability to maintain institutional security. See Block v. Rutherford, 468 U.S. 576, 588-89 (1984) (taking "judicial notice that the unauthorized use of narcotics is a problem that plagues virtually every penal and detention center in the country.")

Accordingly, prison officials have a significant and legitimate interest in preventing unauthorized drug use among inmates.  See Lucero v. Gunter, 17 F.3d 1347, 1350 (7th Cir. 1994) (holding that "the random urine collection and testing of prisoners is a reasonable means of combating the unauthorized use of narcotics and does not violate the Fourth Amendment.").

Here, Graham has a diminished expectation to privacy because she was incarcerated at the time the urine testing was performed. She concedes that the urine testing procedures were performed for purposes of detecting drug use by inmates.  Thus, it appears that the procedures were performed in order to maintain institutional security at the NHSP/W.  Graham has not alleged any facts to demonstrate that the testing procedures were unreasonable.  Nor has she alleged that she was forced to undergo the procedures while in the presence of a male corrections officer.  See Sepulveda v. Ramirez, 967 F.2d 1413 (9th Cir. 1992) (holding that a male parole officer violated the constitutional rights of a female parolee when he observed her during a urine drug test). While the urine testing procedures that Graham was forced to endure may have been unpleasant, humiliating and embarrassing, the discomfort she endured does not appear to rise to the level

of a constitutional violation.  Accordingly, I recommend
dismissal of this claim in its entirety.

II.  Official Capacity

     Construed liberally, the complaint seeks injunctive and
monetary relief for wrongs committed by the defendants as state
actors in their official capacities.  The Eleventh Amendment bars
suits for damages against state entities and state agents working
in their official capacities unless the state has expressly
waived immunity, which has not been done by New Hampshire for
actions brought under Section 1983.  See Puerto Rico Aqueduct &
Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993)
(absent waiver, neither a State nor agencies acting under its
control may be subject to suit in federal court); Will v.
Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989)
(holding that neither a state nor its officials acting in their
official capacities are "persons" under Section 1983).  Official
capacity actions against state actors for prospective injunctive
relief, however, are not treated as actions against the state and
may be considered under Section 1983.  See Will, 491 U.S. at 71
n.10.  To the extent Graham brings official capacity claims for
monetary relief against the remaining defendants, all of whom are

21

NHSP/W employees, I recommend such claims be dismissed.  On the other hand, official capacity actions against state actors for prospective injunctive relief are not treated as actions against the state and may be considered under Section 1983.  See Will, 491 U.S. at 71 n.10.  Thus, Graham is not barred from bringing viable claims for prospective injunctive relief against the defendants in their official capacities.

III. Habeas Corpus Claims

Graham characterizes the amendment to her complaint as an "Addendum to Petition for Habeas Corpus" (document no. 5). Where, as here, a prisoner complains about the conditions of her confinement, she should bring suit under Section 1983.  See, Preiser v. Rodriguez, 411 U.S. 475, 498–99 (1973) (drawing a distinction between challenges to conditions of confinement under Section 1983 and challenges to the fact or duration of confinement under the habeas statutes).  Where a prisoner challenges to the fact of conviction or confinement or the duration of confinement, her claims are cognizable under the habeas statutes.  See Heck v. Humphrey, 512 U.S. 477, 481 (1994); Preiser, 411 U.S. at 498–99.  In this action, Graham challenges only the conditions of her confinement and not the validity or

length of her confinement.  Accordingly, I construe her complaint to be filed solely pursuant to Section 1983.

IV.  Appointment of Counsel

Graham also moves for appointment of counsel (document no. 6).  There is no absolute constitutional right to free legal representation in a civil case.  Bemis v. Kelley, 857 F.2d 14, 15 (1st Cir. 1988).  Rather, appointment of counsel in a civil case is left to the discretion of the court.  See 28 U.S.C. § 1915(e)(1).  An indigent litigant must demonstrate that exceptional circumstances exist to justify appointment of counsel, such that without counsel the litigant most likely would be unable to obtain due process of the law.  DesRosiers, 949 F.2d at 23; Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir. 1986) (per curiam).  Here, Graham has failed to establish the existence of such circumstances.  Accordingly, her request for counsel is denied without prejudice to it being renewed at a later date should circumstances warrant renewal.

CONCLUSION

For the reasons stated above, I find that Graham has alleged the following claims: (1) Eighth Amendment claims premised on the denial of adequate medical care against Belligeron, Fontaine and

23

Chapman; and (2) an Eighth Amendment claim premised on inhumane conditions of confinement against Fortier.  I recommend dismissal of all remaining claims.  Accordingly, by separate order issued simultaneously with this report and recommendation, I authorize the above claims to proceed.

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint.  If the plaintiff disagrees with the identification of the claims herein, she must do so by objection filed within ten (10) days of receipt of this report and recommendation, or she must properly move to amend the complaint.

Any further objection to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); see also Unauthorized Practice of Law Committee v. Gordon, 979

24

F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>,

792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date: December 13, 2007

cc: Kristyn Graham, pro se